The next matter, number 171723, Comite Fiestas de la Calle, San Sebastian v. Comron, Newland, Cruz, et al. May it please the Court, Jane Becker Whitaker, representation of the Comite de la Fiesta de la Calle San Sebastian. Your Honor, I would like to reserve two minutes for rebuttal.  Thank you, Your Honor. The Comite created the Fiesta de la Calle San Sebastian in 1970, starting as a small festival to celebrate the Saints' Feast Day on San Sebastian Street, and soon spreading to the entire islet of Old San Juan. I thought your client was incorporated in 2006. That's true, Your Honor. So how could it have started something in 1970? Well, the Comite existed as an informal entity. But the party before us is a corporate entity. That's true, Your Honor. And before this particular corporation, there was a prior corporation known as Los Vecinos de la Calle San Sebastian, or the neighbors, the people who live on the street. The current corporation is a successor corporation of the corporation that I'm representing. And the prior corporation adopted the actions of the informal group of people who started celebrating the festival starting in 1970. And as I was saying, it converted from being just a small, almost a block party on San Sebastian Street to becoming a festival that occupied the entire Old San Juan area. The point of that being that the term Fiestas de la Calle San Sebastian is not a descriptive term because you're not describing a party on San Sebastian Street. When you say that term, you're describing this particular event that happens the third weekend in January, and it is intended to celebrate Puerto Rican culture, Puerto Rican music, and San Sebastian, because that's the approximate date of the day on which he was martyred. Can you tell me whether the Spanish word for street in that name is an adjective modifying fiesta, or whether it's a noun going along with San Sebastian? Is there any disagreement about which it is? Well, the term calle, being street, is, calle San Sebastian is an adjective, the three words describing the fiestas, the festival. So it's the fiesta of San Sebastian Street. Exactly. It's not the San Sebastian Street Fair. No, because it's... No, it's tied to San Sebastian Day. Exactly. Not San Sebastian Street. Right. And even though the founder of the festival lived on the street, and the intent was to refurbish and make the street better and nicer and all that kind of stuff. That's right. Okay. So, with respect to the events that led to this lawsuit, which happened, what happened was during the 2014 Fiesta de la Catedral de San Sebastian. Just to be clear, we know what the facts are, and you have about four minutes left, so I want you to get to what's important to you. That's exactly where I was going. Okay. In 2014, a member of the committee was asked about what he thought about that festival, and his response was that the mayor had turned the entire city of El San Juan into one big bar. So then when the mayor meets with the committee in 2014, in March of that year, to start the planning for the next year's festival, she points at two of the members of the committee and says, it was either you or it was you who said that I turned the whole city into a big bar. What are we going to do about this? And so it's our contention that that is evidence of the mayor's acting as, you know, the representative of the municipality of San Juan, of her hostility to the committee, and that was her rationale for deciding the next year that the committee was going to be excluded from any sort of involvement in presenting the musical events. So that was why she started to push them out and bring in people who were supportive, as it turns out, not only of her agenda but of her political campaigns. That description, it also sounds like a description of what you're saying. It was the mayor who was really running the fair or the fiesta and deciding on what it would be like, and in fact your client was publicly announcing to the world that the reason it was the mayor's fault that there were lots of bars and everything. So it sounds like it's the mayor's fair, according to your client. Well, and there's no doubt that, and we say this from the beginning of the complaint, there had always been collaboration between the mayors and the committee. You can't have a festival of this level, hundreds of thousands of people come into this small islet without having a collaboration. What is the record evidence in those prior years about who would give out the vendor licenses? Did everything have to go through the committee at any point, or is the city giving the permits? Well, the city obviously contracts with whoever is going to run things, and the arrangement had always been that the city would allow the committee to have the kiosks, run the kiosks that surrounded the Plaza del Quinto Centenario, in exchange for the committee putting on the musical presentation. And I shouldn't lie, it wasn't always. It was because the Plaza del Quinto Centenario didn't exist until 1993. But in any event, once that happened, they started doing that, and that was the arrangement. Here, one of our contentions that there's evidence of discrimination was, if the committee had been allowed to have the kiosks, it would have cost $81,000 to put on the musical production. Here, the mayor gave that contract to a producer who had contributed to her campaign, who put on that musical production for $147,000. There was no evidence as to why that was allowed to happen. And of the committee, the mayor required that they have all the certificates, which is proper, but with respect to another of the producers, she allowed them to participate and gave them a contract for $176,000, even though their certificate showed that they had not filed their tax returns in 2013. Let's assume the committee has a different vision for the fiesta than the mayor does. The committee has a more family-oriented, wants a traditional exhibit celebrating the history and culture. The mayor wants a party time oriented towards younger people, drinking, and partying. And then the committee announces they're critical of the mayor's vision, they think that's the wrong vision for the town. Couldn't the mayor say, well, that's fine, you get your vision, I got mine, I'm the one running this, and so I'm going to have the partying, which means I'm not going to have as many as your kiosks. What's the First Amendment problem or even action there? Well, I mean, in the O'Hare and Umbar cases, you know, the city, you know, it was there, it was trucking and how you're dealing with the airport, but they had different positions as to how they were allowed to do things, but the Supreme Court said you can't cut them out because they criticized the way you want to run things because that's the nature of the First Amendment. We get to say we don't like the way you're doing it. And if we're responsive, then this is just my policy, I'm having a big party, and you're out. But there was never any explanation for, and I think the point you're missing with all due respect is that you can say we have different visions, but you can't say I'm going to allow somebody who's charging me this much more money to do it after you criticize me, and I'm contracting with somebody who doesn't comply with the requisites and has actually committed a crime. I get to contract with them and ignore the fact that, you know, I'm violating your First Amendment rights. Thank you. And I'm sorry. Thank you. Good morning. May it please the Court. Hector Benitez-Araiza for Defendant Appellee, Municipality of San Juan. I will be arguing on behalf of that party with my colleague, Patricia Rivera-McMurray. She will be talking about the trademark aspects, and I will be talking about the other aspects of the appeal. And if any time left after our exposition, we would like to save it for rebuttal if indeed there is some time left. There won't be. Very well. Okay. Now, the first thing that I want to touch is that originally the amended complaint, which is the operative pleading in this case, had ten different causes of action. Discovery ensued, and as the case has progressed, everything has been reduced, in which the appeal only has three issues. Out of ten claims, there are only three issues for appeal. The procedural background of the appeal has several issues that need to be addressed. The first one is that the notice of appeal states that the only order subject to appeal is the motion for reconsideration. Now, Beercliff v. City Mortgage, 772F3, 925, which is included in the brief, has an exact situation in which the notice of appeal only mentions that the motion for reconsideration is up for appeal. Now, even after a reading of a liberal construction of the notice of appeal, this court nonetheless ruled in light of Smith v. Barry, 502 U.S., at 248, and I'm reading straight from the source. It is the notice afforded by a document, not the litigant's motivation in filing it. Counsel, this issue we think is well covered in the briefs. To preserve time, you could move on. All right. Very well. I'll move on then. And just talk about the merits, if I may. Now, the committee's position is that the municipality of San Juan has been pushing out the committee for political reasons. You have to look at the factual record. You have to look at the factual record. And the first thing, the procedural aspects are inextricably entwined because there was a deeming order by the court that stated that the committee had not put forth facts to come forward according to Local Rule 56 of the Puerto Rico District Court of Appeals. Now, the appellant's brief only states that the only standard applicable is the normal review. Again, if you were to look at the deeming order, the case law states that this court has to employ an abuse of discretion standard. But, again, even if you look at the whole record, you will find that all you have is that the question of the certifications, that was decided expressly by the district court. In fact, defendants were sanctioned because they did not produce enough information. And the court stated, bring me those documents. I will check them myself. And the court did check them. And ruled that the parties had produced every certification prior to contracting with the municipality of San Juan. And we must remember that this case started because the committee had not submitted a single certification to the municipality of San Juan. And those are requisites that, by the laws of Puerto Rico, a party has to submit before executing a contract. And it was only signed on January 15 of 2015. Once the district court judge determined that the committee had filed every single one of the documents. The other aspect that the committee points to is that it would have cost the municipality of San Juan $80,000 if only the committee had been allowed to take care of the whole celebration. Fiestas de la Calle San Sebastián is an activity that involves hundreds of thousands of visitors. It is within the municipality's prerogative to organize everything from security, logistics, transportation, providing water and electricity to all kiosks who sell wares at every place in the island of San Juan where the fiestas take place. Now, of course, the municipality, this is not a party that is taking place in the committee's backyard or in a theater. It is in the whole island of San Juan. The municipality has every single prerogative to determine what would be best to put on this activity to serve thousands of persons. On the other hand, the committee, they may argue that they have been traditionally, the persons associated with the committee which was formed in 2006 after the filing of a corporate certificate with the Puerto Rico Department of State, that they have been, if you will, the creators of what the activity is now commonly known. However, where is the right for them to determine how this activity should proceed during the four days it lasts? They are assuming that they have an entitlement to determine who plays in which venues and how many kiosks it can get from the municipality for free. If you look at the whole record, notwithstanding any standard that you may deem appropriate, you will find that there is no evidence that even the municipality knew that the committee was apolitical. Where is the discriminatory animus? There is none. There is none in the areas, back down at the district court, nor is there in the record of appeal. I now cede the floor to Ms. Rivera-McCord. Good morning. Patricia Rivera-McCord on behalf of the Municipality of San Juan. I will be engaging in the trademark analysis. I am going to be parting from the abuse of discretion standard and the fact that the district court did not abuse of discretion in disregarding the reasons behind the committee's motion to reopen the case, insofar as they basically relied on the determination of two USPTO examining officers having decided to allow the registration procedure before the USPTO, US Patent and Framework Office, to go ahead. Now, that determination, according to the committee, was enough evidence of ownership and the fact that the mark could be registered in their name. That was, of course, based on misreading of the USPTO rules and regulations, because as soon as that decision is taken, it opens an opposition proceeding, which we already filed in the USPTO. And so, we would have opposed it. We did oppose that. Not only that, but this court has stated in previous cases that a USPTO determination does not warrant a deferral and a staying on the district court waiting for the USPTO to determine anything, because the Article III courts are the only courts authorized. They don't rely on that argument in front of us anyway, do they? Isn't the question here whether there's secondary meaning or is there something else? If that is true, Your Honor, if we were to accept their standard review as de novo review and based on the record limitations mentioned by my co-counsel, it's an issue of secondary meaning. And that is an issue that they did not, secondary meaning as any other trademark determination is a factual intensive determination and requires a series of evaluations, including the fact that, as the district court stated, there must be something in the consumer's mind that brings forth, identifies the activity as coming from the comité, and that proof is not in the record. I don't think that's what the district court held. I think the district court held that there must be reason to believe that there is a sole source, but doesn't necessarily have to identify what the source is. There must be a sole source. That is true. That was the finding of the district court. How is this different than, say, getting a trademark on Boston Marathon? You say that because that's descriptive. That couldn't be done either. Well, I don't know the details of the Boston Marathon process to go through, but the Boston Marathon, it does belong to a private entity that has used it, and they developed and evolved, and they got the registration. Here in this case, the Comité Fiesta Calle San Sebastián, they have been holding this activity, but this activity is entirely descriptive on its face. It's a feast on a street for a saint. You can use Calle as a name or as an adjective. Either way, it's very descriptive of the procedure. What if it's on the street and not the saint? It's just the street. It would be geographically descriptive, which would require a secondary meeting. Like the word Boston. Yes, it would require a secondary meeting, and that is the burden that they should have brought forth at the district court. And you're saying they didn't do that? They did not do that. If you review the record, either way you review the record, through what is deemed admitted, or through the entire record if you're willing to sit and sift through that, you will see that there is nothing that goes to show at secondary meeting except the mere passage of time, and that is not enough on its own, as per the cases we have cited in our brief. Thank you. Your Honor, just to address the question about the Boston Marathon, I have no idea whether the Boston Marathon is, in fact, a trademark, but I would think that maybe the Boston Marathon has a separate meaning beyond just because it is a unique marathon, but there was a marathon actually cited in our opposition to the motion for summary judgment, and we talk about this briefly in the brief. It's the New York Marathon, and I think it's a different issue than Boston because Boston has its own particular characteristics. The New York Marathon is a marathon of many, like Chicago, Providence, wherever, and they also, like the Comité, present an event that requires, obviously, security, all kinds of assistance from the municipality of New York City. So there cannot there have been a sole source for the mark because it's the New York Roadrunners who registered the trademark, yet they collaborated and collaborate with the city of New York to present the marathon every year. My other point about them would be that they were doing it for 40 years before they registered the trademark. Finally, in response to Counsel Benitez's remarks about it being the municipality of San Juan's prerogatives to choose its contractors, that's true. The same thing was true of Umber and O'Hare. You can choose whatever contractors meet your requirements, but you cannot do so because they made contributions to your political campaigns, and you can't do so when they've violated the law in terms of the requirements that you say that they have to have, like filing your tax returns. I had one question I meant to ask earlier, so let me ask you now with the chief's indulgence. Is there a reason that your notice of appeal only appeals the denial of the motion for reconsideration as opposed to the underlying summary judgment rule? Well, because the court addresses all of the issues raised in the motion for summary judgment, even though perhaps in a cursory fashion it rejects what he calls the re-argument of the issues regarding the discrimination and retaliation claim in a footnote saying that it was just rehashing, but he's considered it and rejected it. So there's that, and there's also the jurisprudence that says that the notice should be read broadly to consider the entire case. Thank you. Thank you both.